**John Edward HILL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–84–0039–CR.**

Court of Appeals of Texas, Tyler.

Dec. 23, 1986.

Rehearing Denied Jan. 15, 1987.

John R. Smith, Center, for appellant.

John Walker, Dist. Atty., Center, for appellee.

OPINION ON REMAND

COLLEY, Justice.

On March 21, 1985, we delivered our opinion in this revocation proceeding. 718 S.W.2d 751. We reversed the revocation order based on our conclusion that the trial court's findings of fact "that Hill had the ability to pay in timely fashion the fees and court costs [1] is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust." This conclusion was made after consideration of

---

1. The State's sole ground for revocation.

Hill's point of error that the evidence was insufficient to support that finding. In our review of the evidence, we applied the standard of review mandated by the Texas Supreme Court in its decision in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 662 (1951), construing Tex. Const. art. V, § 6.

At the time of the delivery of our opinion, the opinions of the Court of Criminal Appeals in *Combs v. State*[2] and *Minor v. State*,[3] but not *Van Guilder v. State*,[4] *Baker v. State*,[5] *Schuessler v. State*,[6] and *Arnold v. State*[7] had been delivered. The Court of Criminal Appeals, 719 S.W.2d 199, in the State's petition for discretionary review reversed our judgment in *Hill* because, as the court stated, we applied the wrong standard of review. That court, quoting from *Van Guilder*, held:

> [I]n reviewing a case involving an affirmative defense, the court of appeals must review the evidence on the affirmative defense by looking at the evidence in the light most favorable to the implicit finding by the jury with respect to such affirmative defense and then determine, by examining all the evidence concerning the affirmative defense, if any rational trier of fact could have found that the defendant failed to prove his defense by a preponderance of the evidence. The court of appeals is limited in its review using this preponderance standard to evidence submitted on the issue of the affirmative defense in question.... It is important to note that this analysis does not involve the appellate court in any fact finding function. The test evaluates the legal sufficiency of the evidence using a legal standard. There must be no reweighing or reclassifying of the evidence by the appellate court.

709 S.W.2d at 181.

As is obvious, the real holding by the Court of Criminal Appeals in *Van Guilder*

and *Hill* is that the Texas Courts of Appeals do not have jurisdiction to consider great weight and preponderance of the evidence fact questions in criminal cases. *Van Guilder*, 709 S.W.2d at 180. That holding appears to be in direct conflict with the plain wording of Tex. Const. art. 5, § 6, hereinafter referred to as section 6, reading in part:

> Said Court of Appeals shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law. *Provided, that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error.* Said courts shall have such other jurisdiction, original and appellate, as may be prescribed by law. (Emphasis added.)

(Vernon 1986).

In *Van Guilder*, the Court of Criminal Appeals brushed aside the provisions of section 6 and proceeded to enunciate the standard of review for evidence sufficiency questions respecting the affirmative defense of insanity. *Van Guilder's* rule was followed in *Baker v. State* and *Schuessler v. State*, and its rule was extended to jury verdicts in competency hearings in *Arnold v. State*. In the instant case, the rule was applied to the affirmative defense cast on a probationer in a revocation proceeding on the issue of ability to pay fees and costs.[8]

Preponderance of the evidence has long been defined in Texas to mean the greater weight and degree of credible testimony.[9] On that burden of proof, the Texas Su-

**2.** 643 S.W.2d 709 (1982).

**3.** 657 S.W.2d 811 (1983).

**4.** 709 S.W.2d 178 (1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986).

**5.** 707 S.W.2d 893 (1986).

**6.** 719 S.W.2d 320 (1986).

**7.** 719 S.W.2d 590 (1986).

**8.** Tex.Crim.Proc.Code Ann. art. 42.12, § 8(c) (Vernon Supp.1986), hereafter referred to as section 8(c) in this opinion.

**9.** *Western Union Telegraph Co. v. James,* 31 Tex. Civ.App. 503, 73 S.W. 79 (1903, writ ref'd); *Compton v. Elliott,* 126 Tex. 232, 88 S.W.2d 91 (1935).

preme Court has declared in a well respected opinion [10] that section 6 empowered the then courts of civil appeals to weigh all the evidence and decide the fact question of whether the trial court or jury findings are against the great weight and preponderance of the evidence.[11]

Disregarding cogent dissents [12] attacking the underpinings of *Van Guilder,* the majority of the Court of Criminal Appeals has continued to apply the *Van Guilder* standard not only to affirmative defenses, but to competency trials as well (*Arnold*).

Before the Court of Criminal Appeals' decision in *Arnold,* the El Paso Court of Appeals in *Meraz v. State,* 714 S.W.2d 108 (Tex.App.—El Paso 1986, no writ), applied the great weight and preponderance standard of review in its review of the evidence of a competency hearing before a jury. The El Paso court concluded that the jury finding was contrary to the great weight and preponderance of the evidence and reversed the judgment of competency as well as Meraz's convictions of aggravated sexual assault and injury to a child. Obviously that decision is doomed for certain reversal based on *Arnold;* however, its rationale of the Court of Appeals fact jurisdiction, (power to *unfind* facts) under section 6 is, in our opinion, nevertheless sound. We especially endorse its criticism of the dictum in *Minor* and the reasoning of *Van Guilder* that construction of the plain and unambiguous language of section 6 is appropriately based on contemporary legislative enactments ("statutory scheme of things"), or inadvertence on the part of the drafters of the 1980 amendment to section 6. The readoption of section 6 by the people in November of 1985 made no change [13] in the language of the proviso reading, "Provided, that the decision of said courts [courts of appeal] shall be conclusive on all questions of fact brought before them on appeal or error."

We agree with Judge Clinton's dissent in *Arnold* insofar as it suggests a different "workable" standard of appellate review of evidence in criminal cases "for affirmative defenses and similar matters requiring proof by a preponderance of the evidence." We are also in accord with Judge Clinton's analysis of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), set forth in *Hill v. State,* 719 S.W.2d 199 (1986), wherein Judge Clinton states:

[T]he Due Process Clause prohibits affirming a conviction unless the standard of *Jackson v. Virginia* is satisfied, but neither it, nor the Double Jeopardy Clause bars a state appellate court from reversing a conviction if the verdict or finding of guilty is found to be against the great weight and preponderance of evidence.

In *Combs,* the High Court decided that the minimum *legal* standard of the due process clause formulated by *Jackson* must be applied on appellate review to test the sufficiency of the evidence to support a criminal conviction, and that the sufficiency of the evidence is a law question.[14] In effect, the court held that the State's burden of proof respecting findings of guilt rises no higher than "the constitutional minimum required to enforce the due process right established in *Winship."* *Jackson v. Virginia,* 99 S.Ct. at 2789 n. 12. The decision totally ignores the grant of "fact" jurisdiction to the courts of appeal by section 6. Certainly the High Court may establish definitions of evidentiary sufficiency to be applied in appellate review *agreeable* to the state constitution, but not one which flies in the face of the plain, strong words of section 6 or one which operates to strip away a convicted defendant's state

---

**10.** *See In re King's Estate, supra.*

**11.** See a discussion of this rule in *Combs,* 643 S.W.2d at 714–716.

**12.** See Judge Onion's dissent in *Baker;* Judge Clinton's dissents in *Schuessler* and *Arnold.*

**13.** The 1985 amendment substituted "court of appeals districts" for "Supreme judicial districts" and "Justice" for "Associate Justice."

**14.** Hence the intermediate court's determination of the question is reviewable by that Court.

constitutional right to seek a new trial in the intermediate appellate courts of this state on the ground that the finding of guilt is against the great weight and preponderance of the evidence.

The historical fact that the Court of Criminal Appeals has never had "fact" jurisdiction certainly should not be a consideration in the determination of whether the courts of appeal, since September 1, 1981, have had jurisdiction under section 6 to reverse any findings made by a judge or jury in criminal cases when that finding is so contrary to the weight and preponderance of the evidence as to be manifestly wrong and unjust. Judge Davis made this clear in his opinion in *Combs*, acknowledging that "[i]f sufficiency of the evidence [in criminal cases] is a 'question of fact,' then the decisions of the Court of Appeals on sufficiency questions would appear to be binding on our Court." *Combs*, 643 S.W.2d at 714. Of course, Judge Davis then developed the rationale that sufficiency of the evidence relating to a finding of guilt is a law, not a fact, question, and, as such, does "not involve any weighing of the evidence." *Combs*, 643 S.W.2d at 717. We respectfully submit that the declared basis for this conclusion in *Combs* is just as weak as the "underpinnings" of *Van Guilder*. The fact that the burden of proof for conviction or a finding of guilt is beyond a reasonable doubt instead of by a preponderance of the evidence provides no basis for such a distinction. *Tibbs v. Florida*. Said another way, logically, a finding of guilt based on the "beyond a reasonable doubt" standard could be found on appellate review to be against the great weight and preponderance of the evidence just as a finding, or refusal to find, that an affirmative defense exists or that a defendant is competent based on the "preponderance of the evidence" standard can be found on review to be against the great weight and preponderance. However, we must accept the refusal of the Court of Criminal Appeals in *Combs* and the other cases cited

herein to recognize the constitutional jurisdiction of the courts of appeal to finally determine "factual" sufficiency of the evidence questions in criminal cases. We withdraw our opinion in *Hill* and substitute the following therefor.

Hill appeals from an order revoking his probation. On June 17, 1981, Hill was convicted on his plea of guilty, based on a plea bargain agreement, of possession of marihuana. Punishment was assessed by the trial court at three years' confinement and a fine of $750. Imposition of sentence was suspended, and Hill was placed on probation for two years. On May 27, 1983, the State filed a motion to revoke Hill's probation, alleging as violations of the conditions of his probation (1) that he failed to report to the probation officer on the 15th day of the months of April and May 1983; [15] (2) that he failed to pay his probation fees due on the 15th day of February, April and May 1983; and (3) that he failed to pay installments of $38.82 due on the 15th day of February, April and May 1983 on the court costs and fine assessed. On July 1, 1983, the trial court revoked Hill's probation, finding that "[Hill] has violated the terms of his probation exactly as alleged in the attached motion to revoke probation filed by the State of Texas." The trial court then imposed sentence of three years without mention of the fine.

Hill argues that the trial court abused its discretion in revoking his probation because the evidence is insufficient to support the trial court's finding that he had the ability to make the payments of fees and costs in question. The State insists that while Hill's testimony (the only evidence presented by Hill) clearly raises the issue of his inability to pay the fees and costs in question, when this court reviews the evidence in a light most favorable to the trial court's finding that Hill had the ability to make the payments, taking into account that the trial judge, as the trier of the fact, was entitled to disbelieve Hill's

---

**15.** Although the trial court found such allegation to be established by his order, no evidence was introduced to sustain such finding, and the State concedes in this appeal that the nonpayment of fees was the sole basis of the revocation order.

testimony respecting his inability to pay, that we should uphold the trial court's judgment and discretion and affirm the case. We reverse and remand.

In this appeal our basic query is, did the trial court abuse its discretion in revoking Hill's probation? That question must be answered by us based on our careful examination of the evidence before the trial court at the time of the entry of the revocation order.

Hill's sole ground of error challenges the sufficiency of the evidence to support the adverse findings made by the trial judge on the issue of his ability to pay the fees and costs. Hill bore the burden of proof and persuasion on such issues because it is an affirmative defense under section 8(c).

At the revocation hearing, the State produced only one witness, Carl Dorrough, a Rains County probation officer. Hill alone testified in defense of the motion to revoke. Dorrough testified that Hill had not paid either his $15 probation fee or the $38.82 installment on costs and the fine due on the 15th day of the months of February, April and May 1983. Hill's testimony essentially admitted that he had not paid such sums on these dates. Thus the evidence is undisputed that Hill did not pay the fees and costs as required by the order of probation as alleged by the State. Hill testified at length both on direct and cross-examination. His testimony shows that during the pertinent periods of time he was a married man and the father of three children; that he worked only one month during the months of February, March, April and May 1983; and that a pickup truck which was his only means of transportation was repossessed in May 1983 because he was unable to make the first three payments thereon due in February, March and April 1983. Hill also testified that his wife did not work and that he had no other source of income and received no food stamps during such period of time. Hill also testified that he had borrowed money from his brother-in-law to provide food for his family and that various other relatives brought groceries to

him and his family. Hill's testimony shows that he owned an undivided one-fifth interest in 57 acres of land, improved with a frame house, located in Alba. Hill's testimony reveals that he and his wife and children resided in the frame house on such property and that such property constituted his residential homestead at all times material to the issues involved. At the time of the hearing below, Hill and his two brothers and two sisters attempted to sell the real estate at a price of $850 per acre, but had not been successful in the effort.

The State in its brief argues that since it is undisputed that Hill owned the interest in the real estate, "there was no reason such property could not be used as a basis for payment of the delinquent fees, fine and cost." We would quickly agree with the State's argument if the property had not been impressed with homestead character. Since it was, we judicially note that the law does not permit a lien to be fixed against homestead property to secure payment of personal loans as suggested by the State. Moreover, we also judicially know that a cotenant frequently encounters difficulty when attempting to sell an undivided interest in real property. Furthermore, the record shows that Hill and his siblings had been attempting for several months to sell the property without success.

Applying *Van Guilder's* standard of review, considering all of the evidence in a light most favorable to the trial court's finding respecting the affirmative defense of inability to pay, we have concluded that no rational trier of the fact could have found that Hill failed to prove his inability to pay by a preponderance of the evidence.

The revocation order is reversed, and the cause is remanded.